271 So.2d 494

**STATE of Alabama**

v.

**KILLIAN WHOLESALE GROCERY CO., INC.**

**7 Div. 34.**

Court of Civil Appeals of Alabama.

Feb. 23, 1972.

Rehearing Denied April 5, 1972.

William J. Baxley, Atty. Gen., Willard W. Livingston, Counsel Dept. of Revenue and Asst. Atty. Gen., William H. Burton, Asst. Counsel Dept. of Revenue and Asst. Atty. Gen., for the State.

No brief from appellee.

BRADLEY, Judge.

The State Department of Revenue entered a final assessment for tobacco tax against the appellee, Killian Wholesale Grocery Company, Inc., in the amount of $8,252.20 plus interest of $206.30.

The assessment resulted from an audit by the appellant of the appellee's books and inventory for the period from October 1, 1969 through December 8, 1969. The audit was prompted by a burglary of appellee's warehouse from which a large number of cases of cigarettes was stolen.

The final assessment was appealed to the Circuit Court of DeKalb County, in Equity. After trial a decree was rendered holding the assessment invalid.

The Revenue Department appealed to this court, contending that the tax is levied on the wholesaler when he receives the cigarettes in his warehouse for sale, storage or distribution, and the fact that the cigarettes were stolen would not prevent the imposition and collection of the tax from the wholesaler.

Title 51, Section 718, Code of Alabama 1940, as Recompiled 1958, provided, prior to its amendment in 1959, that the tax is imposed on the wholesaler "who sells or stores or receives for the purpose of distribution" in this State any cigarettes. This same language is also included in Section 718, by amendatory Act No. 637, Acts of Alabama 1959, p. 1550.

Appellee did not file a brief, but the tenor of its case on appeal to the Circuit Court was that the taxing event occurred when the cigarettes were sold to a retailer, not when the cigarettes were received in the wholesaler's warehouse. Therefore, since the cigarettes were stolen prior to a

sale, no sales tax was due on them because they were not and could not be sold.

There is no controversy in the record as to whether there was a theft of a substantial number of cases of cigarettes from appellee's warehouse; appellant does not attempt to controvert this evidence, for it contends that its assessment is based on the audit which shows that there never was a sufficient number of stamps in appellee's possession to stamp the cigarettes it received in its warehouse. Appellant says that this deficit of stamps existed throughout the period of the audit.

Section 719 of Title 51, Code of Alabama 1940, as Recompiled 1958, provides that a wholesaler who is in the business of selling cigarettes must begin immediately upon receipt of said cigarettes affixing the required revenue stamps on each cigarette package until all packages of cigarettes in his possession are properly stamped.

The wholesaler cannot, of course, place the stamps on the packages of cigarettes until they have been purchased from the State Revenue Department, which is the only legal source of supply for said stamps.

And it is appellant's theory that when a wholesaler of cigarettes is thus required to buy and place revenue stamps on the packages of cigarettes immediately upon receipt by him of these cigarettes, that the taxing event is, in essence, the receiving of the cigarettes into its possession. Why else, it asks, should the wholesaler be required to place the tax stamps—which he has already paid for—on the cigarettes so soon after they are received by him.

In support of this theory, appellant cites us to Snow v. State, 259 Ala. 579, 67 So.2d 822, an Alabama Supreme Court case decided in 1953.

In the cited case the question before the court was whether or not the tax imposed by the Revenue Department was a sales tax or use tax, and it was deemed to be a sales tax. In reaching that conclusion the Supreme Court said:

" . . . Section 718 as amended by the Act of August 12, 1947, General Acts 1947, page 143, levies a license or privilege tax on every person who sells or stores or receives for the purpose of distribution within the State, . . . cigarettes . . . .

"Section 719, as amended by the Act of July 27, 1951, General Acts 1951, page 590, provides that the license tax shall be paid by affixing stamps in the manner and at the time therein set forth."

To further support its theory of the case, appellant cites us to the Pennsylvania case of N. Tilli & Sons, Inc. v. Commonwealth of Pennsylvania, 420 Pa. 28, 215 A.2d 653.

In that case an assessment had been imposed against the appellant by the appellee for cigarette taxes due on cigarettes stolen from appellant.

Appellee contended that the tax was imposed upon and due to be paid by the person or firm receiving or selling the cigarettes.

There was no question but that the cigarettes had been in the possession of appellant and subsequently stolen therefrom.

The court found that the appellant would be liable for the tax due on the cigarettes even though they had been stolen unless appellant could point to some provision in the law specifically exempting it from liability.

There was a provision in the Pennsylvania law providing for refunds or allowances for cigarettes lost due to certain events such as fire, casualty or act of God, but specifically providing that cigarettes lost due to theft were not excepted from the payment of the tax.

The court thereupon held that the appellant was liable for the tax due on the unstamped cigarettes which had been stolen.

A similar case is Lewiston-Auburn United Grocers, Inc. v. Johnson, Me., 253 A.2d 338, decided by the Supreme Court of Maine.

The complaint was that a certain number of cases of cigarettes had been stolen from appellant's possession. Some of the cigarettes had stamps on them and some did not have stamps affixed to them.

The appellee refused a request for a refund of tax paid on the stamped cigarettes and informed appellant of its liability for the tax on the unstamped cigarettes.

The court said the question for decision was whether the Legislature intended to impose a tax on the sale of cigarettes or to impose a tax on cigarettes held for sale.

The controlling statute provided that the tax was imposed on all cigarettes held for sale.

The court held that the tax was imposed on the possession not the sale, even though another section of the law authorized the affixing of the stamps at any time prior to sale, and that the ultimate consumer was to bear the burden of the tax. The court concluded that the placing of the stamps on the cigarettes was just an indication that the tax had been paid, and that the requirement of the statute that the consumer was to assume the tax did not indicate an intention to tax the sale.

The Maine Court also said that its statute did not make specific provision for refunds for stamped cigarettes which had been stolen. It did say, however, that the regulations promulgated by the appellee prohibiting refunds for stolen cigarettes were valid and not inconsistent with the statute imposing a tax on cigarettes held for sale.

Prior to 1959 our statute, i. e., Section 718, supra, as it was then worded, could have been given a construction similar to that received by the statutes in the two cited cases; for it was said in Merchants Cigar and Candy Co. v. City of Birmingham, 245 Ala. 587, 18 So.2d 137:

". . . The State's tobacco stamp tax is embraced in subdivision 1 of Article 9 of Title 51, Code of 1940, sections 718 to 743. *That tax is laid directly upon every person who sells to any one the tobaccos specified. The seller shall pay to the State the stamp tax.* The city ordinance provides for a stamp tax in similar language. There is no law or ordinance which requires him to collect a similar amount from the purchaser, by adding it to the sales price, or otherwise, as is required under the General Sales Tax law. Section 776, Title 51, Code of 1940. Section 731 requires the wholesale seller liable for the tax to invoice the sale in duplicate showing the amount and value of each class of articles sold, and retain a duplicate subject to audit and inspection by the State Department of Revenue. This is evidently only for auditing purposes by the State department. The State stamp tax is of course imposed as directed by law on the sales price before adding the amount of that tax. Section 718(b), Title 51, Code. It does not provide that the invoice shall include separate items for the stamp tax, or charge it as such to the purchaser. But that procedure was adopted, and the tax was collected by the wholesaler from his purchaser along with the balance of the invoice. The collection of it as a tax from the purchaser was appellant's own system not required by the State Revenue Department, nor by law or ordinance and has no effect on the instant question. Pure Oil Co. v. State, 244 Ala. 258, 12 So.2d 861, 148 A.L.R. 260. The tax is levied on the seller as any other tax against him. He could absorb the amount of it without increasing the sale price. *There is no law which directs him to pass it on as a tax to his purchaser.* But 'the price is the total sum paid for the goods. The amount added because of the tax is paid to get the goods and for nothing else. Therefore it is part of the price.' Lash's Products v. United States, 278 U.S. 175, 49 S.Ct. 100, 73 L.Ed. 251." (Emphasis added.)

But in 1959 the Legislature amended Section 718, supra, by passing Act No. 637,

**304**

supra, which reads, in pertinent part, as follows:

> "Subsection (e) . . . it being the purpose and intent of this provision that the tax levied is in fact a levy on the ultimate consumer or user with the wholesaler, distributor, jobber, or retail dealer acting merely as an agent of the state for the collection and payment of the tax to the state. . . . he shall collect the tax imposed hereunder from the purchaser or consumer, and the amount of the tax shall constitute a debt from the purchaser or consumer to the seller until paid . . ."

The amendatory language in Act No. 637, supra, convinces us that the Legislature intended to change the taxing event from the possession of the cigarettes to the sale of the cigarettes.

Before the 1959 amendment, the statute provided that the tax was levied on the person who had the cigarettes in his possession for sale. The intent and purpose of this language of the statute was, as stated in *City of Birmingham,* supra, to put the tax on the person who sells the cigarettes and to require him to pay the stamp tax to the State. It further held that there was no law in effect requiring the seller to pass the tax on to the purchaser, that if he did, it was to be considered only as a part of the cost of the cigarettes, and not as a separate tax.

The 1959 amendment to Section 718, supra, changed this construction of the then existing law. Act No. 637, supra, specifically provided that the tax was now levied on the ultimate consumer with the wholesaler and retailer being only a tax collector. It required the wholesaler and retailer to collect the tax from the consumer and created a debt for the tax in favor of the wholesaler and retailer.

Our appraisal of the effect of Act No. 637, supra, is confirmed, we think, by the following language found in State v. Automatic Sales, 277 Ala. 63, 167 So.2d 146:

> "It appears that during part of the period covered by the audit, here involved, there was in full force and effect § 718, Title 51, Recompiled Code of Alabama 1958, which levies a license or privilege tax for state purposes on any person, firm or corporation who sells cigarettes. The tax is measured by a graduated formula in accordance with the volume of sales and is (9) '[u]pon all cigarettes * * * over three and two-fifths inches long and less than five and one-half inches long,' and is fixed at four mills on each such cigarette. This tax is in addition to all other taxes of every kind now imposed by law.

> \* \* \* \* \* \*

> *"This law was amended by Act No. 637, Acts of 1959, p. 1550, by requiring the seller to add the tax to the product, '* * * it being the purpose and intent of this provision that the tax levied is in fact a levy on the ultimate consumer or user with the wholesaler, distributor, jobber, or retail dealer acting merely as an agent of the state.'* This Act became effective on November 19, 1959.

> \* \* \* \* \* \*

> "We hold that the trial court erred when it excluded from the gross receipts computation *the stamp taxes which appellees* (as retailers) *paid the state prior to amendatory Act No. 637, supra, which changed the tax from one on the retailer to one on the consumer. Prior to this amendatory change, this tax applied to appellees for the privilege of doing business and was blended with other costs of doing business. Appellees had the privilege of absorbing this tax or adding it to the retail sale price of his product. If added, as here, the tax became a part of the gross receipts to be used as a measure for the sales tax imposed by § 753,* Title 51, Code of 1940, as amended; and, also, by § 786(2)(h) and § 786(3), Title

51, Recompiled Code of 1958, Pocket Part; [citations omitted.]

\* \* \* \* \* \*

". . . The deficiency assessment is based on the contention that the sales tax imposed by the state and paid in whole or in part by appellees should be included in the gross receipts, because appellees did not post on their vending machines during the period of the audit a breakdown of the sales price for each package of cigarettes, so that the purchaser would be informed of the amount of taxes levied on him as the consumer.

\* \* \* \* \* \*

"The trial court, on remandment of this cause, will include in the gross receipts as a measure for the sales tax accruing to the State during the audit period all stamp taxes imposed by the State prior to amendatory Act No. 637, supra, *specifically placing the tax on the consumer*; . . . ." (Emphasis added.)

We think a fair assessment of the law prior to 1959 would be that the wholesaler of cigarettes was charged with the tax burden, i. e., the tax was levied on him, he was required to buy and affix the stamps to the packages of cigarettes, and he could if he chose, pass the tax on to the consumer as part of the cost of the product, but not as a tax.

With the change in the law as expressed by the language of Act No. 637, supra, which we think is clear and unambiguous, the tax is now levied on the consumer, he carries the ultimate tax burden and the wholesaler is specifically cast in the role of the tax collector, not the taxpayer as he was before the change in the statute.

It is our firm conviction also that the wholesaler is still required, as provided by Title 51, Section 719, Code of Alabama 1940, as Recompiled 1958, to buy the tax stamps from the State Revenue Department and affix them to the packages of cigarettes within the time therein required, but it is also our belief that if the cigarettes are stolen before they can be sold, the wholesaler cannot be saddled with the tax burden, for our statute makes the wholesaler a tax collector not a taxpayer. And, he cannot be a tax collector when he does not have a product to sell; in other words, if he cannot sell the cigarettes to a consumer from whom he can collect the tax due, then he cannot be required to pay the tax. The ultimate tax burden is not on the wholesaler but on the consumer.

As was also said in *Automatic Sales,* supra:

"We are sympathetic with the Department of Revenue in its efforts to seal all loopholes against sales tax evasions, but this court cannot impose penalties that . . . are not sanctioned by law."

Whether or not there is a need for further legislative or departmental action to cope with the problem of collecting taxes on stolen cigarettes is not within the province of this court to recommend.

However, we would conclude that our statement as to the payment of taxes on stolen cigarettes does not abrogate or repudiate the requirements of Section 719 and the other sections of the Code regulating the purchase of the stamps nor the placing of them on the packages of cigarettes.

The decree of the trial court setting aside the assessment imposed by appellant against appellee is hereby affirmed.

Affirmed.